[No. 20084. Department One. November 8, 1926.]

D. O. ELLISON *et al., Respondents,* v. A. H. SCHEFFSKY,
*Appellant.*[1]

[1] APPEAL (23)—DECISIONS REVIEWABLE—SUITS IN EQUITY—AMOUNT
IN CONTROVERSY. The constitutional two hundred-dollar limita-
tion upon the jurisdiction of the supreme court does not apply to
an action of equitable cognizance to establish a mechanic's lien
upon a chattel as prior to a chattel mortgage.

[2] LIENS (2)—LIEN ON CHATTELS—WAIVER—POSSESSION. A common
law lien for labor for repairs upon a truck, depending upon
exclusive possession, is waived and lost where, after the work
was finished, the truck was delivered to the owner who used it
for a few days, and a lien was only asserted when it came again
into the possession of the lien claimant.

Appeal from a judgment of the superior court for
Grays Harbor county, Abel, J., entered October 23,
1925, in favor of the plaintiffs, in an action to enforce
an equitable lien. Reversed.

*W. J. Murphy* and *T. H. McKay,* for appellant.

*F. L. Morgan,* for respondents.

TOLMAN, C. J.—This action was brought by respond-
ents, as plaintiffs, to recover possession of an automo-
bile truck, seized and taken from them by the sheriff
under a statutory foreclosure of chattel mortgage in-
stituted by the appellant Scheffsky.

The complaint alleges the delivery of the truck to
plaintiffs for the purpose of making repairs thereon,
the making of the repairs of the reasonable value of
$144.20, the seizure of the truck by the sheriff and the
taking it away without the consent of plaintiffs, under
color of the foreclosure notice; and it is further alleged
that Scheffsky's rights are subordinate to those of the
plaintiffs and the prayer is for the return of the truck
free and clear of all incumbrances and claims of the de-

[1]Reported in 250 Pac. 452.

fendants.  A restraining order was also sought and obtained.  A trial in the superior court resulted in a judgment favorable to the plaintiffs, directing—

"That the defendant, A. H. Scheffsky forthwith restore said property to the plaintiffs to the place from which it was taken, free and clear of incumbrances, or in default of such restoration within twenty-four hours from the time of the signing of this judgment  . . . that a money judgment in the amount prayed for in the complaint of the plaintiffs, to-wit: the sum of One Hundred Forty-four and 20/100 Dollars ($144.20), together with the plaintiffs' costs be and the same hereby is awarded to the plaintiffs, and that execution issue therefor."

From this judgment, the defendant Scheffsky has appealed.

[1]  The first question for consideration is the respondents' motion to dismiss the appeal, because the amount involved is less than two hundred dollars; that is, that the value of the truck is nowhere alleged or proven and the amount in controversy is only the sum of $144.20, represented by the repair bill.  Were it a question only of the amount in controversy, the motion might be well taken; but this seems to be a case of equitable cognizance.  To say nothing of the injunctive relief sought,—which we do not now consider,—it is very evident, from the synopsis of the complaint already given, that equity was invoked to determine the rank of the conflicting liens, and by the judgment, which in effect denied Scheffsky's lien and established the lien of the plaintiffs, the case is clearly to be classified as one in equity.  Under a long-established and well-settled line of decisions holding that the two-hundred-dollar limitation does not apply to equitable actions, the motion to dismiss must be, and it is, denied.

A number of errors are assigned, only one of which

A number of errors are assigned, only one of which we deem it necessary to consider, although others are perhaps well taken.

[2]  Respondents are asserting here a common-law lien only, and that lien is, and must be, based upon possession.

"It is indispensable to the existence of the common law lien that the party who claims it should have an independent and exclusive possession of the property, the right to the lien being based directly upon the idea of possession. . . ."  17 R. C. L. page 601.

"A livery-stable keeper has no lien either for storage or rent, for the care and keeping in his own buildings on his own premises, of vehicles of an undertaker, which the latter periodically takes out and uses in his business." [Syllabus] *Clarksburg Casket Co. v. Valley Undertaking Co.*, 81 W. Va. 212, 94 S. E. 549, 3 A. L. R. 660.

"As a general rule a common-law or other lien dependent upon possession is waived or lost by the lienholder voluntarily and unconditionally parting with possession or control of the property to which it attaches; and such lien cannot be restored thereafter by resumption of possession. . . ."  37 C. J. page 336.

"As it is a right founded on possession, it ordinarily must cease when the possession ceases. Therefore the relinquishment, if voluntary, operates as an extinction of the lien; and except in case of fraud, and perhaps mistake, such a lien cannot be restored by resumption of possession. . . ."  3 R. C. L. 123, § 45.

"A voluntary and unconditional delivery to the owner, of property on which a mechanic's lien has accrued, is a waiver of the lien; and except in case of fraud and perhaps mistake, such lien cannot be restored by resumption of possession." *Sensenbrenner v. Mathews* [Syllabus], 48 Wis. 250, 3 N. W. 599, 33 Am. St. 809.

This seems to be the well-settled law wherever such liens are recognized, and no authority to the contrary has been brought to our attention.

Such being the law, what are the facts? Respondent Sherk, on cross-examination, testified:

"Q. You would work on it a while and then he would take it out? A. The car was worked on prior to that, sometime prior to that, and he took the truck, and the bill was due and we had some more checking up to do on it and he brought it in and we finished it up and no check came in, so the next time we held it. Q. When was that? A. I don't know exactly. Q. You say four or five days before the sheriff came? A. Yes, sir. We held the truck."

Inasmuch as by respondents' bill of particulars the last charge was dated May 25 and the sheriff seized the truck on June 6 following, it is apparent that, when the work was finished, the truck was delivered to the person who had ordered the work and was presumptively the owner; and that thereafter, the bill not being paid, the next time the truck came in respondents held it, and not until then was any right of lien asserted. There is nothing in the evidence to strengthen the case made by the quoted testimony and much which is less favorable to the respondents. The same witness testified that no charge was made for the checking up as follows:

"Q. Do you know the date of that checking up? A. No, sir. Q. In your bill of particulars you don't claim anything for the checking up? A. No, there isn't any car that we finish up, that goes out, we may do a complete overhauling. It goes out and may be run for two weeks, three weeks, thirty days. It comes in and we check it up. We do that in almost every case. Q. This checking up was done after the 25th day of May? A. Yes, sir. Q. A couple of weeks later? A. I don't know exactly. Q. You are not claiming any lien on the truck for this checking up? A. No, sir. Q. It was done gratuitously, no charge? A. No charge."

This evidence falls far short of establishing a common law lien and therefore respondents were not entitled to the possession of the truck, and, as they can

prevail in such an action as this only on the strength of their own title, it is unnecessary to determine the validity of the mortgage under which the truck was seized by the sheriff.          •

For the reasons stated, the judgment is reversed, and the cause remanded with instructions to dismiss the action.

HOLCOMB, MAIN, MITCHELL and FULLERTON, JJ., concur.